{¶ 12} Although I agree with the reasoning of the principal opinion, I write separately to emphasize the lack of the evidence before the trial court regarding T.V.'s competency to testify. There was almost no evidence on the fourth Frazier factor, "the child's understanding of truth and falsity" and there was a complete lack of evidence on the fifth factor, "the child's appreciation of his or her responsibility to be truthful." See Frazier, 61 Ohio St.3d at 247, syllabus. As indicated above, the trial judge had an mandatory obligation to consider all five factors. See id.
 {¶ 13} At the competency hearing, the testimony elicited by the prosecutor from T.V. regarding her understanding of truth and falsity and her appreciation of her responsibility to be truthful was the following:
"Q. Okay. [T,] do you know what it means to have to tell the truth?
"A. (Witness shook head.)
 "Q. Okay. You are shaking your head. Which do you mean? If you tell the truth, what do you have to do? Let me ask you a different way. You are wearing a jump suit today, aren't you?
"A. (Witness nodded.)
"Q. Is that a yes?
"A. Yes.
"Q. Okay. If I said your jump suit was green, is that right?
"A. (Witness shook head.) No.
"Q. No? What color is your jump suit?
"A. Pink.
"Q. It is pink. You are right, it is pink.
"A. Pink and white.
 "Q. Pink and white, you are right. Yes, it is. And who is this right here?
"A. My bear.
 "Q. That's a bear. If I told you that this was a kitty cat; is that right?
"A. No.
 "Q. No, it is not right, is it. Did you talk with me about having to come to the courtroom today?
"A. Yes.
 "Q. Okay. And did I tell you that you would have to tell the truth when you came here?
"A. Yes.
"Q. Okay. And did your mom tell you that, too?
"A. Yes.
 "Q. Okay. Did we tell you that that means that you have to tell us what happened and you can't make it up?
"A. Yes.
"Q. Yes, okay."
 {¶ 14} After T.V. indicated that she did not understand what it meant to have to tell the truth, the prosecutor did not ask any follow-up questions on that specific issue. Instead, the prosecutor asked T.V. questions about what is "right" and "not right," never linking those two concepts to truth and/or falsity. Equating right and not right with truth and falsity is not necessarily something that a five-year-old child is able to do and, absent some demonstration to that effect, the trial court had no reason to presume that this child was able to do so. Further questioning of T.V. failed to even suggest that this child had such an understanding. Although, at the conclusion of the prosecutor's questioning, T.V. agreed that she had been told to tell "the truth" when she came to court, there had been no demonstration that she understood what "the truth" was.
 {¶ 15} Defense counsel's subsequent questioning of the child only served to demonstrate that the child remained confused:
 "Q. [T,] do you remember when [the prosecutor] asked you if you understood what telling the truth was?
"A. Yes.
"Q. Did you shake your head back and forth like a no?
"A. (Witness nodded.)
"Q. You did shake your head back and forth from side to side?
"A. Yes.
"Q. [T.,] do you know what a lie is?
"A. No.
"Q. No? Is that what you are saying?
"A. (Witness nodded.)"
 {¶ 16} T.V. again indicated a lack of understanding of the concepts of truth and falsity. After these responses by T.V. to direct questions on the issue, there was no follow-up questioning by defense counsel or anyone else to demonstrate that the child was not, in fact, completely confused about the issue.
 {¶ 17} The trial judge concluded with the following line of questioning:
 "Q: [T.,] I am going to ask you a question right now. What you said to me and to [the prosecutor] so far today, have you been telling the truth? She asked you about what the truth is. You have told the truth in this court to this Judge?
"A: Yes.
"Q: Everything you said now is the truth?
"A: (Witness nodded.)
 "Q: Is there any question about that in your mind as to whether it is true or not?
"A: Yes.
"Q: There is a question?
"[Prosecutor]: I don't think she understood the question, Judge.
"Q: Okay. You told the truth as far as what happened?
"A: Yes.
"Q: All the questions you answered are — were the truth, right?
"A: Yes.
 "Q: And you know what it is to tell the truth, you already answered that.
"A: Yes.
"Q: It is something that really happened, right?
"A: Yes.
"Q: Not something you make up, right?
"A: Yes.
 "Q: So you are going to keep telling the truth now from here on, and what you are going to say is what really happened, right?
"A: Yes."
 {¶ 18} T.V.'s answers to the trial judge's questions might seem appropriate, if viewed in isolation. Given the confusion that T.V. had already demonstrated, however, her answers to the judge's questions failed to demonstrate that she did, in fact, have a general understanding of the concepts of truth and falsity.
 {¶ 19} Moreover, even if the judge's questioning somehow cured the shortcomings of the confused testimony elicited from T.V. on the fourth Frazier factor, there was absolutely no testimony elicited from T.V. on the fifth mandatory Frazier factor, an appreciation of her responsibility to be truthful.
 {¶ 20} The trial judge had the discretion to find the child competent to testify only upon a consideration of all five of the Frazier factors. Because there was not adequate evidence before the trial court on all five factors, I agree with the principal opinion that the trial judge exceeded the scope of his discretion by finding that this child was competent to testify and I would reverse the judgment of the trial court on that basis.